IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERLIB INVESTORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-06203 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| COHN & COHN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

      This Order and Statement provide additional detail regarding the Court's oral ruling on June 10, 2022 granting in part and denying in part Plaintiff's motion for sanctions and to compel testimony of Cohn & Cohn employee Leticia Garcia [210].

## STATEMENT

      Plaintiff JerLib Investors, LLC ("JerLib") has brought this action claiming, among other allegations, that it was fraudulently induced to deposit $3 million in an escrow account held by Defendant Cohn & Cohn, a law firm. According to JerLib, Defendant Erwin Cohn ("Erwin"), then a partner in Cohn & Cohn, executed the escrow agreement on behalf of the firm in March 2019. After its request for the return of the $3 million deposit was not met, JerLib brought the present action. As relevant here, JerLib's Second Amended Complaint ("SAC," Dkt. No. 111) asserts claims for breach of contract, breach of fiduciary duty, conversion, and fraud against Cohn & Cohn, Erwin, and another firm partner, Charles Cohn ("Charles"). Cohn & Cohn, Charles, and Erwin claim that they, like JerLib, are victims of fraudulent acts perpetrated by others, some of whom are also named as Defendants in this action. In particular, they posit that the elderly Erwin was tricked into signing the escrow agreement and did so without the authorization of Cohn & Cohn or Charles. Based on Cohn & Cohn, Charles, and Erwin's assertion of this defense, JerLib contends that Erwin's control over firm operations and his cognitive abilities at the time the escrow agreement was executed are key issues in the case.

      To obtain evidence of Erwin's role in firm operations and his cognitive functioning during his final years at Cohn & Cohn, JerLib noticed the deposition of Leticia Garcia, a Cohn & Cohn legal assistant. Cohn & Cohn and Charles (together, "Firm Defendants") objected to the taking of Garcia's deposition, and so Jerlib filed a motion to compel it. (Dkt. No. 182.) In particular, Firm Defendants expressed concern over JerLib's intention to question Garcia about the firm's operations during a period in 2021 when Charles was briefly suspended from the practice of law. Firm Defendants argued that such questions are irrelevant and raised the prospect that JerLib wanted to depose Garcia solely as a means to harass Firm Defendants. Nonetheless, this Court

found that JerLib had demonstrated valid reasons for deposing Garcia and allowed the deposition to proceed.

On February 24, 2022, Garcia appeared for her deposition. She was represented at the deposition by one of the attorneys representing Firm Defendants in this case. Initially, Garcia answered questions concerning Erwin's mental capacity and his role in the firm's operations during the years preceding his January 2022 retirement. However, when Jerlib's attorney asked Garcia questions about the operations of Cohn & Cohn during the period of Charles's suspension, Garcia refused to answer based on her counsel's instruction. Later, Garcia asserted the attorney-client privilege and the work-product doctrine to refuse to answer other questions concerning the firm's operations and Erwin's cognitive abilities. JerLib now seeks to compel Garcia's testimony and further requests that Firm Defendants be sanctioned.

In response, Firm Defendants assert that JerLib's questions concerning the firm's operations during Charles's suspension confirmed their fear that JerLib was using Garcia's deposition to harass Charles—according to Firm Defendants, there could be no other purpose for that line of inquiry since Charles's suspension occurred in 2021, well after the events relevant to this case. Moreover, Firm Defendants contend that Erwin's mental and cognitive abilities are not relevant because their defense does not rely on any claim that Erwin was of unsound mind in March 2019; a cognitively healthy person can still be a victim of fraud. Finally, Firm Defendants claim that many of JerLib's questions concern information protected by the attorney-client privilege.

Having considering the briefing and argument of the parties, the Court concludes that Garcia's deposition should be reopened because her counsel's instructions to refuse to answer certain questions were improper. Normally, an objection during a deposition "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). While it is appropriate under Federal Rule of Civil Procedure 30(c)(2) to instruct a deponent not to answer on privilege grounds, the Court reminds Firm Defendants of the scope of the attorney-client privilege and the work product doctrine. Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because subject-matter jurisdiction in this case is based upon diversity of citizenship and the claims in the SAC are brought under Illinois state law, Illinois privilege law governs. *Simon v. Nw. Univ.*, 259 F. Supp. 3d 848, 852 (N.D. Ill. 2017). To assert the attorney-client privilege under Illinois law, "a claimant must show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hosp. & Med. Ctr.*, 745 N.E.2d 561, 566 (Ill. App. Ct. 2001). However, Illinois courts reviewing an assertion of the attorney-client privilege recognize that "the privilege, not the duty to disclose, is the exception." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991). Accordingly, the privilege should be construed "within its narrowest possible limits." *Id.*

Unlike the attorney-client privilege, claims of protection under the work-product doctrine are governed solely by federal law, as the doctrine has its origins in Federal Rule of Civil Procedure 26(b)(3) rather than Federal Rule of Evidence 501. *Abbott Lab'ys v. Alpha Therapeutic*

*Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001). In contrast to Rule 501, Rule 26(b)(3) does not contain any requirement that federal courts apply state privilege law in cases involving state-law claims. *Id.* Under federal law, the attorney work-product doctrine protects "1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and 3) by or for a party or by or for a party's representative." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).

When the relevant privileges are properly understood, it is apparent that many of Firm Defendants' privilege objections at Garcia's first deposition were unfounded. It would, of course, be inappropriate for JerLib to ask Garcia about Cohn & Cohn's relationships and communications with specific clients or the substance of particular matters handled by the firm. However, general, testimony concerning the firm's day-to-day operations, Erwin's role at the firm, or non-legal activities relating to the firm's financial operations are unlikely to be privileged. Because Firm Defendants improperly objected on privilege grounds to a;; questions regarding such matters during Garcia's deposition, the Court will reopen Garcia's deposition.

Although Garcia's deposition will be reopened, the Court nonetheless believes that certain limitations are appropriate. Most importantly, the Court does not believe that issues related to Charles's suspension in 2021 and the firm's operations in 2021 (or later) are relevant. Firm Defendants are not claiming that Erwin's cognitive abilities prevented him from practicing law in March 2019 and whether he retained the mental capacity to participate in the firm's operations in 2021 has little bearing on the claims in this litigation. Similarly, questions regarding disciplinary actions taken against Charles unrelated to and after the events underlying the SAC are irrelevant to any claim or defense. Thus, to protect Firm Defendants from annoyance, embarrassment, or oppression, the Court limits questioning regarding Erwin's activities at the firm to the time period ending December 31, 2020.

Finally, the Court finds that JerLib's conduct during Garcia's deposition does not warrant sanctions. Notably, when the Court first permitted JerLib to take Garcia's deposition, it allowed that Firm Defendants could potentially terminate the deposition if it became unbearably abusive or harassing. Moreover, one of the grounds for instructing a deponent not to answer is to present a motion under Rule 30(d)(3). A Rule 30(d)(3) motion allows a deponent or party to move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." While Firm Defendants did not ultimately file such a motion, they nonetheless had a reasonable objection to the manner JerLib was taking Garcia's deposition and their conduct was at least consistent with Rule 30(d)(3) and the Court's prior guidance. For that reason, the Court does not believe that sanctions are appropriate.

Dated: July 1, 2022

_____
Andrea R. Wood
United States District Judge

3