**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JERLIB INVESTORS, LLC, ) <br> a Florida limited liability company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COHN & COHN, an Illinois partnership, ) <br> ERWIN COHN, CHARLES A. COHN, ) <br> LEE S. ROSE, JOHN KRCIL, BLACK ) <br> LION INVESTMENT PARTNERS, INC., ) <br> BROWN CAPITAL FUNDING ) <br> INTERNATIONAL, LLC, ) <br> CHRISTOPHER R. BROWN ) <br> and STEPHEN HAY, ) <br> ) <br> Defendants. ) | Case No. 19-cv-06203 <br><br> Judge Andrea R. Wood <br><br> Mag. J. Sheila M. Finnegan |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AGAINST DEFENDANT ERWIN COHN**

Plaintiff, JERLIB INVESTORS, LLC ("JerLib"), by its undersigned counsel, hereby submits the following as its reply in support of its motion for partial summary judgment against Defendant Erwin Cohn ("Erwin") [ECF Nos. 221, 222].:

**INTRODUCTION**

Erwin has filed his Response to JerLib's motion for partial summary judgment which takes a "kitchen sink" approach to try and avoid judgment in JerLib's favor. Erwin's arguments range from the legally unfounded (*e.g.*, that the *Moorman* doctrine bars JerLib's breach of fiduciary duty claim) to the factually incredible (*e.g.*, Erwin did not, in fact, breach his obligations under the Escrow Agreement to return JerLib's $3,000,000.00).

Erwin signed the Escrow Agreement on behalf of C&C. He then added Lee Rose as an authorized signatory and representative for C&C to make withdrawals and transfers from the

1

Escrow Account. He then sat back and allowed Lee Rose to steal $3,000,000.00 of JerLib's money. Erwin's liability and culpability could not be clearer. Needless to say, his arguments to try and stave off summary judgment on JerLib's breach of contract, breach of fiduciary duty and conversion claims are meritless.

## ARGUMENT

### I. THE EVIDENCE IS IRREFUTABLE THAT ERWIN BREACHED THE ESCROW AGREEMENT AND THAT HIS ACTIONS CAUSED JERLIB'S LOSS OF $3,000,000

#### A. Erwin Breached The Escrow Agreement And The Fact That Lee Rose – Erwin's Designated And Authorized Agent For The Escrow Account – May Have Actually Withdrawn The Funds From The Escrow Account Does Not Relieve Erwin Of Liability

Incredibly, Erwin initially argues that there is a "question for the jury" as to whether Erwin breached the Escrow Agreement. [ECF No. 251, at p. 2]. Such an argument is completely frivolous and emblematic of the delusion that has seemingly guided the Cohn Defendants in this case.

To be clear, Erwin – and Erwin alone – signed the Escrow Agreement and agreed to bind himself and Cohn & Cohn to the terms and obligations under the Escrow Agreement. [ECF No. 231, at ¶¶ 30-31]. The Escrow Agreement obligates the Cohn Defendants (including Erwin) *inter alia*: (1) to deposit JerLib's funds "in a separate designated trust account of Escrow Agent for the exclusive benefit of [JerLib]"; (2) to return JerLib's funds back to JerLib after 75 days of deposit within 5 days of written notice by JerLib; and (3) to not move or modify JerLib's funds without JerLib's "express prior written approval…and then only in accordance with [JerLib's] instructions." [ECF No. 231, at ¶¶ 33, 41].

There is no dispute that these terms of the Escrow Agreement were not performed by anyone – and certainly not by Erwin. A cursory review of the bank statements received from

Chase for the Escrow Account reveal that JerLib's funds were not held in a separately designated trust account and and were disbursed without JerLib's written approval. [ECF No. 231, at ¶¶ 39, 47-48]. There is also no dispute that Erwin did not return JerLib's $3,000,000 within 5 days of written notice from JerLib as required under the Escrow Agreement. [ECF No. 231, at ¶¶ 42-43].

Contrary to what Erwin may contend, it is axiomatic under Illinois law that "a party's failure to perform a contract according to its terms constitutes a breach." *Dreyfuss Metal Co. v. Berg*, 569 N.E.2d 19, 24 (Ill. App. Ct. 1990); *see also Pacini v. Regopoulos*, 665 N.E.2d 493, 497 (Ill. App. Ct. 1996) ("Failure to perform any term of a contract…is a breach of contract"); *Certified Mechanical Contractors, Inc. v. Wight & Co., Inc.*, 515 N.E.2d 1047, 1052 (Ill. App. Ct. 1987) ("The failure to perform any term of a contract…is a breach of contract"). Erwin signed and is a party to the Escrow Agreement. There is no dispute that he did not perform his obligations under the Escrow Agreement (*e.g.*, return JerLib's funds upon written demand). Therefore, Erwin breached the Escrow Agreement.

Erwin tries to argue that because Lee Rose is the person who actually withdrew and/or transferred JerLib's funds out of the Escrow Account, this somehow absolves him of committing a breach of the Escrow Agreement. [ECF No. 251, at pp. 2-4]. Specifically, Erwin argues that "Erwin did not transfer any money out. Erwin did nothing to commingle JerLib's funds from other investors. Erwin did not move JerLib's funds to other third parties." [ECF No. 251, at p. 4]. It is difficult to understand what the relevance of any of these statements is. Once again, by the terms of the Escrow Agreement, *Erwin* was obligated to place JerLib's funds into a separate client trust account, to not allow JerLib's funds to be moved without JerLib's written consent, and to return Jerlib's funds within 5 days of written notice from JerLib. *Erwin* did not do any of these things. *Erwin*, therefore, has breached the Escrow Agreement. *Dreyfuss, Pacini, Wight supra*.

3

Further, to the extent Erwin is arguing that Lee Rose breached the Escrow Agreement (an impossibility since Lee Rose is not a party to the Escrow Agreement) and Erwin did not, such an argument possesses no merit since Erwin appointed Lee Rose as an agent and signer for the Escrow Account and is therefore bound by Lee Rose's actions. Indeed, Erwin attested and warranted that Lee Rose was an authorized signer and agent for the Escrow Account and was added as such in accordance with the resolutions and procedures of Cohn & Cohn. Specifically, Erwin attested as follows when he added Lee Rose as a signer to the Escrow Account:

> The undersigned hereby certifies that the persons added as authorized signers [Lee Rose] on the account(s) indicated above [the Escrow Account] have been added in accordance with resolutions or other documents of the Business regarding signing authority for bank accounts. The undersigned further certifies that for those added as authorized signers, the names, titles and signatures are correct.

[ECF No. 231, at ¶ 45 (JPMC/C&C00006)].

By adding Lee Rose as a signer on the Escrow Account, Erwin gave Lee Rose the following authority with regard to the Escrow Account:

> SIGNING AUTHORIZATION: RESOLVED, that any one of the person(s) indicated above *is authorized to act for and on behalf of the Business in any matter involving any of the Business' depository accounts at the Bank*, including the authority to instruct the Bank to close the account, and is further authorized to sign and implement for and in the name on behalf of the Business, as they or any of them seen fit, the terms of all agreements, instructions, drafts, certificates, or other documents relating to any depository account or other business of the Business including, but not limited to payroll agreements, night depository agreements, funds transfer agreements or safe deposit agreements.

[ECF No. 231, at ¶ 37 (JPMC/C&C00001) (emphasis added)]. Erwin added Lee Rose as an agent authorized signer on the Escrow Account allowing him to transfer and withdraw funds as he pleased. Erwin cannot now disavow Lee Rose's actions as Lee Rose was an expressly authorized agent of the Cohn Defendants to make transfers and withdrawals from the Escrow Account.

4

### B. There Is No Doubt That Erwin's Breaches Of The Escrow Agreement Caused JerLib's Losses

Erwin next contends that JerLib should not be granted summary judgment on its breach of contract claim because the element of proximate cause has not been established. [ECF No. 251, at pp. 6-8]. Erwin rhetorically asks "Where is the proof of cause in fact? Where is the proof of legal cause?" [*Id*., at p. 7].

Is Erwin seriously submitting that there is an issue or debate that had Erwin fulfilled his contractual obligations to keep JerLib's funds segregated, not moved them without JerLib's written authorization, and returned JerLib's funds within 5 days upon Jerlib's demand that JerLib would not have sustained the loss of its funds? "Proximate cause is a legal term representing the *common-sense* notion that a closer causal connection should be required for liability than an act being the cause-in-fact of any injury. Whether defendants' acts are the proximate cause of an injury depends upon whether the injury was of a type that a *reasonable person would see as a likely result of their conduct*." *Webb v. Amato*, 210 F.Supp.2d 1015, 1016 (N.D. Ill. 2002) (emphasis added) (citing *First Springfield Bank & Tr. V. Galman*, 720 N.E.2d 1068 (Ill. 1999)). Any reasonable person would see that the failure to return $3,000,000 of client's funds as required by a contract would result in the loss of said $3,000,000 by the client to whom the $3,000,000 was to be returned. No serious argument can be made otherwise as a matter of "common-sense."

### II. THE EVIDENCE IS IRREFUTABLE AND UNREBUTTED THAT ERWIN BREACHED HIS FIDUCIARY DUTY OWED TO JERLIB AND THAT HIS BREACHES CAUSED JERLIB'S LOSS OF $3,000,000

#### A. The Evidence Has Firmly Established That Erwin Breached His Fiduciary Duties as Escrowee

Erwin initially claims that "JerLib is completely silent on a single affirmative act that Erwin took to breach a single identified fiduciary duty." [ECF No. 251, at p. 9]. It is difficult to believe

5

that such a statement could be made in a filing with the Court. This is obviously not true as JerLib specifically set forth the breaches of fiduciary duty by Erwin in its summary judgment filing. [ECF No. 222, at p. 5].

Illinois law is clear that escrowees have a fiduciary duty to act in accordance with the escrow instructions. *Int'l Capital Corp. v. Moyer*, 806 N.E.2d 1166, 1172 (Ill. App. Cr. 2004) ("[E]scrowees have been found to owe a fiduciary duty both to the party making the deposit and the party for whose benefit it is made...Under this analysis, the escrowee owes a duty to act only in accordance with the escrow instructions."); *231 W. Scott, LLC v. Lakeside Bank*, 80 N.E.3d 753, 760-61 (lll. App. Ct. 2017) ("Cases over the years have consistently held escrowees to their fiduciary duty to act only and strictly in accordance with the escrow instructions and have held escrowees accountable for acting outside said instructions"); *Toro Petroleum Corp. v. Newell*, 338 N.E.2d 491, 495 (lll. App. Ct. 1974) ("[T]he escrowee owes a fiduciary duty to act only according to the terms of the Escrow Instructions"). Therefore, all of the breaches of contract by Erwin set forth in Section I-A *supra* also constitute breaches of fiduciary duty. *Moyer, 231 W. Scott, Toro supra*.

To the extent Erwin is arguing that he needed to take some "affirmative" act and that his mere failure to adhere to the terms of the Escrow Agreement is insufficient for a breach of fiduciary duty claim, such an argument is nonsensical and Erwin provides no support for it.

### B. The "*Moorman* Doctrine" Does Not Bar JerLib's Breach Of Fiduciary Duty Claim

Erwin next proclaims that the "economic loss doctrine" (*i.e.*, the "*Moorman* doctrine") bars any potential recovery by JerLib for its breach of fiduciary duty claim. [ECF No. 251, at p. 9 ("Even if JerLib could state a tort claim for purely commercial loss (which it cannot)…"]. Unsurprisingly, Erwin makes his bold claim without citing any authority whatsoever to support it.

Even a cursory search of the relevant law in Illinois would have revealed that the "economic loss doctrine" does *not* bar breach of fiduciary duty claims against escrow agents.

It is firmly established under Illinois law that "[W]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 875 (N.D. Ill. 2002) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 162 (1994)). "The question, then, is whether the relationship between [plaintiff and defendant] gave rise to a fiduciary duty. *The existence of a fiduciary duty would arise outside of the contract and would constitute an exception to the Moorman doctrine. Ploog*, 209 F.Supp.2d at 875 (emphasis added). As the cases cited in Plaintiff's Memorandum make clear, Illinois law has consistently held that escrowees owe fiduciary duties to parties making deposits. [ECF No. 222, at p. 5]; *see also Choi v. Chase Manhattan Mortgage Co.*, 63 F.Supp.2d 874, 885 (N.D. Ill. 1999) ("[M]ismanagement of an escrow may give rise to a cause of action for a breach of fiduciary duty").

Thus, the *Moorman* doctrine does not bar JerLib's fiduciary duty claim as the Escrow Agreement "gave rise to a fiduciary relationship between [JerLib and the Cohn Defendants], which makes the *Moorman* doctrine inapplicable." *Ploog*, 209 F.Supp.2d at 875 (denying motion to dismiss breach of fiduciary duty claim against escrowee on basis of *Moorman* doctrine); *see also Choi*, 63 F.Supp.2d at 885-86 (same). Erwin's argument in this regard is utterly meritless and directly contradicted by established precedent.

### C. Lee Rose Was Designated And Authorized By Erwin To Make Withdrawals From The Escrow Account; He Cannot Now Claim Rose's Actions Are An Intervening Cause

Erwin finally argues that summary judgment may not be awarded in JerLib's favor on its breach of fiduciary duty claim because Lee Rose's actions are an "intervening cause" which

7

negates any claim that Erwin's breaches of fiduciary duty are a proximate cause of JerLib's damages. [ECF No. 251, at pp. 9-11]. Erwin's argument completely misses the mark and is unsupportable under established law.

Once again, the uncontroverted evidence has established that Erwin expressly authorized Lee Rose to act as an agent for the Cohn Defendants and to make transfers and withdrawals from the Escrow Account. *See* Section I-A *supra*. Under established Illinois law, "[A] principal is liable for its agent's conduct within the scope of the agent's authority." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 298 (Ill. 2004). There is no argument here that Lee Rose was not acting within the scope of his authority as Erwin signed an express agreement granting him the authority to make transfers and withdrawals from the Escrow Account. Lee Rose cannot therefore act as an intervening cause given that he was acting as an expressly authorized agent *for* the Cohn Defendants. *Rivera v. Lake County*, 974 F.Supp.2d 1179, 1193 (N.D. Ill. 2013) ("A principal is liable for the tort of his agent…when the tort is committed in the scope of the agent's agency").

### III. THE EVIDENCE HAS ESTABLISHED JERLIB'S ENTITLEMENT TO SUMMARY JUDGMENT AGAINST ERWIN ON JERLIB'S CONVERSION CLAIM

Erwin next argues that JerLib is not entitled to summary judgment on its conversion claim for two reasons: (1) Erwin did not take any action to convert JerLib's money; and (2) Erwin does not currently have possession of JerLib's $3,000,000. [ECF No. 251, at pp. 11-13]. Neither claim possesses any merit.

Erwin claims that JerLib's funds were converted by several other parties (*e.g*., Edward Wooten, Black Lion, etc.), not him. [ECF No. 251, at p. 11]. Erwin is wrong and fundamentally misunderstands what the tort of conversion is. These may be some of the individuals when ended up *possessing* some of JerLib's funds; however, the funds were *converted* by Rose, Erwin, and

C&C after they were deposited into the Escrow Account and dispersed elsewhere. Unlike a claim for replevin, possession by a defendant is not required for a claim for conversion. *See Lyon Financial Services, Inc. v. AKB Enterprises, Inc.*, 2010 WL 4386841, at \*6 (N.D. Ill. Oct. 28, 2010) (citing *Am. Bank of the North v. Jelinski*, 2010 WL 1753245 (Minn.App.Ct. 2010) (explaining that "[a] conversion action seeks to recover damages, while a replevin action seeks to regain possession of the item itself"); *see also* 66 AM. JUR. 2d REPLEVIN § 5 Replevin Distinguished from Trespass, Trover, and Conversion ("…the purpose of replevin is the return of the property, not the recovery of damages for the seizure or for the value of the property as in trespass, trover, or conversion"); 18 AM. JUR. 2d CONVERSION § 66 Actions to Recover Possession ("There is a distinction between an action for the conversion of property and an action of detinue or replevin wherein the plaintiff primarily seeks recovery of the property rather than damages equal to its value").

Erwin and C&C – either on their own or by their authorized signatory and agent for the Escrow Account, Lee Rose – wrongfully transferred JerLib's funds out of the Escrow Account and converted them. Erwin conveniently ignores that JerLib's funds were converted from Cohn & Cohn's client trust account. Erwin, at all times, was a signatory and maintained control over C&C's client trust account. [ECF No. 253, at ¶ 17]. C&C is liable for conversion of JerLib's funds and Erwin, as a general partner of C&C, is individually liable as well. *See Miller v. McAlla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC,* 214 F.3d 872, 876 (7th Cir. 2000) (rejecting argument by lawyers that they should not be liable for partner's conduct and noting that "The liability of a partnership is imputed to the partners, and so the plaintiff was entitled to sue the partners as well as the partnership").

9

Erwin further conveniently ignores that he designated Rose as Cohn & Cohn's agent – both by: (1) executing the necessary documents designating him as a signatory on Cohn & Cohn's client trust account (*see* Section I-A *supra*); and (2) through his representations to JerLib through Tim Tawoda and Brian Buckta. [ECF No. 253, at ¶¶ 11, 12, 19]. Cohn & Cohn – and Erwin – are responsible for the actions and torts of its agent, Rose, taken with respect to Cohn & Cohn's client trust account that Erwin gave him authority over. [*Id.* At ¶ 12]. *See Rivera v. Lake County,* 974 F.Supp.2d 1179, 1193 (N.D. Ill. 2013) ("A principal is liable for the tort of his agent…when the tort is committed in the scope of the agent's agency"). Erwin cannot disavow himself of Lee Rose's conduct which he expressly authorized.

## CONCLUSION

For all of these reasons, Plaintiff, JerLib Investors, LLC, respectfully requests that this Honorable Court enter a summary judgment in its favor and against Defendants, Cohn & Cohn, Erwin Cohn, and Charles Cohn on Counts IV-VI of the Second Amended Complaint [ECF No. 111].

                                                Respectfully submitted,

                                                JERLIB INVESTORS, LLC

                                                By:__/s/ *Victor J. Pioli*_____
                                                 One of Its Attorneys

Victor J. Pioli (pioliv@jbltd.com)
Ramses Jalalpour (jalalpourr@jbltd.com)
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)

*Attorneys for Plaintiff,*
  *Jerlib Investors, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Victor J. Pioli*