IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERLIB INVESTORS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-06203 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| COHN & COHN, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff's motions *in limine* 6, 7, and 8 [322], [323], [324], are granted. In addition Defendants' motions *in limine* 3 and 5 [315], [326], are granted, and their motion *in limine* 4 [316] is denied. See the accompanying Statement for details.

**STATEMENT**

This Order addresses the parties' remaining motions *in limine* in advance of the anticipated jury trial in this matter.[1] The following briefly summarizes the facts relevant to the motions. A more complete factual background may be found in the Court's March 31, 2023 Memorandum Opinion and Order regarding the parties' motions for summary judgment. (Dkt. No. 279.)

Plaintiff JerLib Investors, LLC ("Jerlib") is a single-member limited liability company formed in connection with an investment opportunity offered by SynSel Energy, Inc. ("SynSel"). SynSel promised JerLib that if it deposited $3 million into a specially held account, it would earn astronomical returns.

Eventually, Defendant Lee Rose was brought into the deal. Rose proposed that JerLib and SynSel enter into an agreement whereby JerLib's $3 million would be deposited in a cash escrow account, and as the escrow agent he recommended Cohn & Cohn, a small personal injury law firm consisting of two partners: Defendants Charles Cohn ("Charles") and Erwin Cohn ("Erwin"). Erwin happened to be Rose's longtime friend. Skeptical about using as the escrow agent a small personal injury law firm with which it had no previous relationship, JerLib asked SynSel's Chief Executive Officer, Tim Tawoda, to reach out directly to Cohn & Cohn. Subsequently, Tawoda reported back to JerLib that he had spoken with Erwin and that Erwin verified that Rose had long

---

[1] The parties are reminded that the Court's pretrial evidentiary rulings are necessarily preliminary and may be altered even if nothing unexpected happens at trial. *Luce v. United States*, 469 U.S. 38, 41–42 (1984); *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006).

performed escrow work for Cohn & Cohn. This was apparently enough for JerLib to proceed with the transaction.

Before JerLib deposited the $3 million, Rose accompanied Erwin to a bank and was added as a signatory to an existing Cohn & Cohn checking account. Shortly thereafter, JerLib deposited $3 million into that account pursuant to an escrow agreement with Cohn & Cohn ("Escrow Agreement") under which the subject funds were to be separately held for JerLib's exclusive benefit with Cohn & Cohn serving as the escrow agent. Erwin signed the Escrow Agreement on Cohn & Cohn's behalf. Almost immediately, large amounts of JerLib's funds were transferred out of the escrow account and directed to Rose and his associates. Ultimately, JerLib's supposed investment opportunity fell through, and it demanded the return of its $3 million deposit. When its requests went unanswered, JerLib brought the present action. Charles claims that he had no involvement or knowledge of Erwin's involvement with JerLib until JerLib filed suit.

## I.

The Court begins with Cohn Defendants' motions *in limine*. The Court first briefly provides some background as to the claims against which Cohn Defendants will be defending themselves.

At trial, JerLib will seek to prove claims of common-law fraud and consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. JerLib is expected to contend that Erwin fraudulently induced it to execute the Escrow Agreement with Cohn & Cohn by falsely representing that Rose was Cohn & Cohn's longtime escrow specialist and then stole JerLib's $3 million deposit. For present purposes, the Court focuses on the elements of common-law fraud because, "[g]enerally, proving a common-law fraud claim also results in proving a consumer-fraud claim based on the same evidence." *Werderman v. Liberty Ventures, LLC*, 857 N.E.2d 320, 324 (Ill. App. Ct. 2006). In Illinois, a common-law fraud claim requires a plaintiff to prove:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

*Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992). Keeping in mind what JerLib must prove to prevail at trial, the Court turns to consider each category of evidence contested by Cohn Defendants.

## A.

Cohn Defendants' motion *in limine* 3 asks the Court to preclude JerLib from introducing evidence of nine other escrow agreements Rose executed with other individuals, supposedly on

Cohn & Cohn's behalf. In addition, they ask that this Court exclude several emails sent to Cohn & Cohn's email account by signatories of certain of those escrow agreements.

While Cohn Defendants argue multiple bases for excluding the other escrow agreements, the Court will bar them pursuant to Federal Rule of Evidence 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." According to JerLib, the escrow agreements and the emails sent to Cohn & Cohn by their signatories will establish that JerLib was just one victim of a broader scheme to defraud perpetrated by Erwin and Rose. But JerLib has introduced no evidence demonstrating that any of the parties to these other escrow agreements were defrauded. All JerLib offers are copies of agreements (each of which is signed by Rose, not Erwin) with other parties and one-sided communications sent to Cohn & Cohn's email account. The prejudice from admitting the escrow agreements is evident from JerLib's stated purpose for introducing them: JerLib hopes the jury will infer based on the evidence of the other agreements that Erwin was a participant in a larger fraudulent scheme even though they have no other evidence suggesting such a larger scheme.

JerLib also contends that the emails about the other escrow agreements sent to Cohn & Cohn's email account are relevant to rebut Charles's anticipated defense that he had no knowledge of what Erwin was doing on behalf of the firm. However, Charles's liability in this case would not be due to his direct involvement in or knowledge of the alleged fraud. Indeed, in granting Cohn Defendants' request for summary judgment as to JerLib's civil conspiracy claim, the Court explained that there is "nothing in the record [that] shows Charles was actively involved in any discussions regarding the Escrow Agreement or Escrow Account prior to JerLib contacting him to request the return of its $3 million." (Summ. J. Mem. Op. and Order at 24, Dkt. No. 279.) The reason Charles may be held liable for the alleged fraud is because he is a partner of Cohn & Cohn, a general partnership. And as a general partner, he may be held liable for the wrongful acts of Erwin, his co-partner. *See* 805 ILCS 206/306 ("[A]ll partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law."); *see also Pioneer Bank & Tr. Co. v. Austin Bank of Chi.*, 664 N.E.2d 182, 185–86 (Ill. App. Ct. 1996) ("[A] [general] partnership is liable for the wrongful acts of a partner committed in the ordinary course of partnership business. Furthermore, a partnership may be sued as an entity, and all partners are liable jointly and severally for everything chargeable to the partnership . . . ." (citations omitted)).

Because evidence as to the other escrow agreement has limited relevance and would unduly prejudice Cohn Defendants, the Court grants Cohn Defendants' motion *in limine* 3.

**B.**

With their motion *in limine* 4, Cohn Defendants ask that the Court preclude JerLib from introducing emails reflecting Erwin's false statements of material fact giving rise to the fraud claims. Both emails were sent during the period SynSel was vetting Cohn & Cohn's suitability as an escrow agent on behalf of JerLib. One email was sent by Tawoda, SynSel's Chief Executive Officer, to Scott Yaecker, an agent of JerLib. In the email Tawoda tells Yaecker that he

3

"personally spoke with Erwin Cohn this morning." (JerLib's Resp. to Cohn Defendants' Mot. in Limine 4, Ex. B, Dkt. No. 330-2.) Erwin informed Tawoda that he and Rose had "known each other for 40 years and [Rose] does a lot of these with Cohn & Cohn." (*Id.*) The other email was sent by Brian Buckta, a SynSel agent, to Yaecker confirming that Tawoda "was able to verify [Rose's] 41-year association with Cohn & Cohn by speaking directly with Erwin Cohn. Lee Rose is a financial specialist who manages Escrow services for Cohn & Cohn, working under the full authority of the firm." (JerLib's Resp. to Cohn Defendants' Mot. in Limine 4, Ex. A, Dkt. No. 330-1.)

Cohn Defendants contend that these emails must be excluded as hearsay. The admissibility of these emails came up at the summary judgment stage as well. Then, the Court rejected Cohn Defendants' hearsay objections because Erwin's statements recounted in the email, when offered against him, are properly regarded as non-hearsay statements of a party-opponent under Federal Rule of Evidence 801(d)(2). And the fact that the statements are recounted in emails does not pose a problem because both Tawoda and Buckta testified that the emails accurately reflected their own direct conversations with Erwin. Tawoda and Buckta are both listed as "will call" witnesses in the parties' pretrial order. So long as that is the case there is no hearsay issue. *E.g.*, *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2019 WL 955354, at *10 (N.D. Ill. Feb. 27, 2019) ("[I]t is clear that the content of these emails can be admitted at trial through [the testimony of its sender] who has personal knowledge of the contents of his own email."). Cohn Defendants' motion *in limine* 4 is denied.

## C.

Cohn Defendants' motion *in limine* 5 requests that the Court strike the opinions of JerLib's proffered expert. In particular, JerLib intends to call as an expert witness Mary Robinson, a former Administrator of the Illinois Attorney Registration and Disciplinary Commission, to testify as to the standard of care and duties owed by Cohn Defendants in safeguarding JerLib's funds.

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

4

"In *Daubert*, the Supreme Court interpreted Rule 702 to require the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017) (internal quotation marks omitted). The Court's gatekeeping function requires a three-step analysis before admitting expert testimony. *Id.* at 779. Specifically, the Court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Id.* The proponent of the expert bears the burden of demonstrating by a preponderance of the evidence that the expert's testimony satisfies the *Daubert* standard. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Cohn Defendants primarily object to Robinson's opinions as consisting solely of legal conclusions. *See, e.g.*, *Ball v. Kotter*, 723 F.3d 813, 825 (7th Cir. 2013) ("[E]xperts cannot give testimony that amounts to statutory interpretation, offer legal conclusions that a jury could make on its own, or testify regarding what legal research shows with respect to a key legal term that should be defined by the court." (internal quotation marks omitted)). But JerLib claims that an expert may permissibly testify as to the governing standard of care that Cohn Defendants owed as attorneys to their clients when holding client funds. *See, e.g.*, *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2022 WL 540662, at *2 (N.D. Ill. Feb. 23, 2022) ("[E]xcept for the most obvious cases of negligence, the standard of care is established through expert testimony.").

The key problem for JerLib is that Robinson's proposed testimony as to the standard of care has no apparent relevance to the fraud claims being tried. There is no "duty" element to either fraud claim. Such a duty is relevant to a claim for breach of fiduciary duty, but JerLib already prevailed on that claim (without any need for expert opinion). Indeed, JerLib does not tie Robinson's expert testimony to any element of the claims it must prove at trial. And the Court cannot discern any reason why the jury would need to hear about the standard of care in rendering a verdict on the fraud claims. Those claims concern whether Erwin knowingly deceived JerLib into depositing its money with Cohn & Cohn, a decision that injured JerLib since, as a result of depositing the funds with Cohn & Cohn, those funds are gone. The jury will be asked to decide whether JerLib's injury was caused by its reasonable reliance on Erwin's misrepresentations of Rose's relationship with Cohn & Cohn. Whether Cohn Defendants' mismanagement of JerLib's funds also violated the Illinois Rules of Professional Conduct has no bearing on the matter. Cohn Defendants' motion *in limine* 5 is granted.

## II.

The Court next turns to JerLib's remaining motions *in limine*.

With its motion *in limine* 6, JerLib seeks to exclude evidence and argument showing that Erwin's alleged fraud was committed outside the scope of Cohn & Cohn's partnership agreement, such that the partnership (and Charles, as a general partner) cannot be held liable. The Court already held in its summary judgment ruling that the undisputed evidence established that Erwin's actions were taken in his capacity as a Cohn & Cohn partner and were authorized under the terms of the firm's partnership agreement. Cohn Defendants will not be permitted to introduce evidence

and argument inconsistent with this Court's prior rulings. Accordingly, JerLib's motion *in limine* 6 is granted.

For the same reason, JerLib's motion *in limine* 7 is granted. That motion seeks to preclude Cohn Defendants from introducing evidence and argument that their conduct fell within the Escrow Agreement's clause absolving Cohn & Cohn from liability for acts or omissions made in good faith. In its summary judgment ruling, the Court held that the Escrow Agreement's exculpatory clause was inapplicable to protect Cohn Defendants against liability.

In its motion *in limine* 8, JerLib seeks to bar Cohn Defendants from referring to its principal's wealth. Cohn Defendants do not oppose that motion provided that, at trial, JerLib does not open the door to exploring the matter. JerLib's motion *in limine* 8 is therefore granted.

## III.

For the foregoing reasons, JerLib's motions *in limine* 6, 7, and 8 (Dkt. Nos. 322, 323, 324) are granted, Cohn Defendants' motions *in limine* 3 and 5 (Dkt. Nos. 315, 326) are granted, and Cohn Defendants' motion *in limine* 4 (Dkt. No. 316) is denied.

Dated:  April 18, 2024

_____
Andrea R. Wood
United States District Judge